IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  12-cv-01993-WYD-CBS
        (consolidated with 12-cv-01994-WYD-CBS)

SIR MARIO OWENS,

        Plaintiff,

v.

OFFICE OF THE DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL
DISTRICT;
CAROL CHAMBERS, District Attorney;
ANN TOMSIC;
EMILY WARREN;
JOHN HOWER, Deputy District Attorneys;
OFFICE OF THE COLORADO ATTORNEY GENERAL;
JOHN SUTHERS, Attorney General;
MATTHEW DURKIN;
DANIEL EDWARDS, Assistant Attorneys General and Special Deputy District Attorneys;
JAMES A. CASTLE;
JENNIFER L. GEDDE;
JONATHAN REPPUCCI; and
C. KEITH POPE, Office of Alternate Defense Counsel-appointed contract attorneys,

        Defendants.

---

## ORDER

---

I.      <u>INTRODUCTION</u>

        THIS MATTER is before the Court on the Colorado Attorney General

Defendants' and 18th Judicial District Attorney Defendants' [collectively "Defendants"]

Joint Motion to Dismiss and Brief in Support of the Motion filed in 12-cv-01994 on

August 15, 2012.  The Plaintiffs in 12-cv-01994 are trial counsel who represented Sir

Mario Owens ["Owens"] in trial proceedings in *People v. Owens*, No. 06CR705,

Arapahoe District Court.[1]  Owens was sentenced to death in those proceedings, and is currently in the appeal process.  Trial counsel challenge certain provisions of the Unitary Review Scheme in Colorado ["URS"], C.R.S. § 16-12-201, *et seq.*, and its impact on Owens' post-conviction proceedings and direct appeal.

Defendants' motion to dismiss asserts that the Court lacks subject matter jurisdiction over the claims in 12-cv-01994.  A response to the motion was filed on August 23, 2012, and a reply was filed on September 5, 2012.  For the reasons discussed below, the motion to dismiss is granted, and 12-cv-01994 is dismissed without prejudice.

I also note that a related case which was consolidated with this case, Case Number 12-cv-01993, was brought by Owens' direct appeal counsel on July 30, 2012. It was dismissed on August 2, 2012, at direct appeal counsel's request.  On August 12, 2012, a "FRCP 60(b)(1), (6) Motion for Relief from Order Dismissing This Action, on Grounds of Mistake and Counsel Conflict" was filed and remains pending.  In the motion, Plaintiff seeks to reopen the case.[2]  I decline to rule on that motion at this time because, according to a transcript of a hearing before the Arapahoe County District Court on September 11, 2012, direct appeal counsel stated that Owens has instructed them to dismiss the case.  (Sept. 11, 2012, Tr. at 31:3-5, 32:2:7, attached to Trial

---

[1]  Plaintiffs in this case will hereafter be referred to as "trial counsel."

[2]  The Court did reopen 12-cv-01993 for the limited purpose of ruling on motions to consolidate filed in both cases, but did not rule on the merits of the motion to reopen.  (*See* Minute Order of August 23, 2012, ECF No. 14.)

Counsel's Submission filed September 12, 2012, ECF No. 31.)  Thus, I will wait to see if

Plaintiff moves to withdraw the motion to reopen.

II.    BACKGROUND

Prior to enactment of the URS, criminal defendants in Colorado pursued post-

sentencing challenges of their convictions and sentences in a serial manner.  They

could first commence a direct appeal of their conviction or sentence.  In the event the

conviction and sentence were affirmed, they could apply for post-conviction review of

the conviction and sentence.  This is consistent with criminal sentencing in other states.

The enactment of the URS in 1997 abolished the serial approach to post-sentencing

litigation for death-sentenced defendants only, and provides for "unitary review" of all

pretrial, trial, and post-trial proceedings for those defendants.  The central purpose of

enacting the unitary review system was to expedite post-sentencing litigation by

"[e]liminating. . . unreasonable and unjust delays".  C.R.S. § 16-12-201(2)(d).  By

creating a unitary review system, the State could impose strict time limits—it imposed a

time limit of two years within which all post-sentencing litigation involving a death-

sentenced defendant must be completed.

Under the URS, two sets of counsel are appointed for the prisoner after he has

been sentenced to death.  The first is charged with prosecuting the prisoner's post-

conviction claims and any appeal arising from the post-conviction review.  Simultaneous

thereto, the second set of attorneys is charged with prosecuting the prisoner's direct

appeal.  The post-conviction claims are brought, heard, and decided prior to any direct

appeal.  The direct appeal and any appeal from the post-conviction proceedings are

then to be combined into a single brief by the two sets of attorneys.  The URS is thus

"unitary" in two senses:  the death-sentenced defendant's challenges are addressed in

a single system, and the challenges are handled simultaneously.  Also under the URS,

if a defendant wishes to pursue a claim of ineffective assistance of trial counsel, he

"automatically waives confidentiality" between himself and trial counsel, "but only with

respect to the information that is related to the defendant's claim of ineffective

assistance."  C.R.S. § 16-12-206(2).

According to the motion to dismiss, trial counsel's representation of Owens

ceased more than three years ago, when Owens indicated his intent to assert

ineffective assistance of counsel claims concerning his representation at trial.  Despite

this, trial counsel initiated suit in 12-cv-01994 alleging that, under the URS, Owens

faces an imminent breach of his attorney-client privilege and confidences with said

counsel.  Trial counsel seek judicial protection against the disclosure of the privileged

materials, and assert that the URS "imposes unprecedented and impermissible burdens

upon the Sixth Amendment, due process, and equal protection rights of death-

sentenced defendants, invoking this Court's Article III jurisdiction."  (Compl. ¶ 1.)

Trial counsel allege in that regard that the URS draws the two sets of Sixth

Amendment attorneys retained under the URS into irresolvable conflicts, and "pits" them

against each other.  (Compl. ¶¶ 9, 11.)  That is because for post-conviction counsel to

prosecute the claims of ineffective assistance of trial counsel, they must make every

colorable claim that counsel failed to preserve important issues.  As part of this duty,

post-conviction counsel has been directed to turn over to the government materials

subject to the attorney client privilege from trial counsel's files that support their claims. This purportedly creates a conflict with direct appeal counsel who assert that disclosure of the privileged material to the government will irreparably harm Owens' direct appeal. According to the Complaint, this places Owens in the position of "having to choose between his constitutional right to present all meritorious postconviction claims and his constitutional right to prosecute his direct appeal unimpaired by the disclosure of privileged information." (Compl. ¶ 11.) This alleged conflict and other burdens imposed on Owens under the URS are absent as to criminal defendants in the State of Colorado who have not been sentenced to death, all of whom prosecute their appeal and post-conviction motion serially.

I now turn to the state court proceedings regarding Owens and his privileged materials, as I find them important to a resolution of Defendants' motion to dismiss. According to the Complaint, the government moved in March 2012 for disclosure of trial counsel's files related to Owens' defense. It argued that disclosure of those files was required under the URS since Owens' post-conviction counsel had informed the government that Owens would be asserting a claim of ineffective assistance of counsel. That same month, post-conviction counsel was finalizing its post-conviction motion and requested copies of trial counsel's trial files and interviews of trial counsel.

Owens' direct appeal counsel expressed concern that further disclosure of privileged information to post-conviction counsel could jeopardize Owens' direct appeal. After direct appeal counsel asked trial counsel to refrain from disclosing privileged information to post-conviction counsel, trial counsel declined to disclose any further

privileged information to them.  Post-conviction counsel responded by acknowledging the concern about claims they raised affecting "Mr. Owens['] prospects on direct appeal or on retrial but stating, "This is not our concern.  Our sole duty as postconviction counsel is to provide effective assistance of counsel to Mr. Owens in the postconviction phase of this case.  It is our job to raise all available postconviction claims and it is our intent to do so."  (Compl. ¶ 46.)

At a hearing on April 18, 2012, in the Arapahoe County District Court ["state district court"], Judge Gerald Rafferty ordered trial counsel to provide post-conviction counsel with a complete copy of its file.  He also ordered direct appeal counsel to withdraw the directive to trial counsel not to disclose the privileged information, and said he would consider contempt sanctions for disobedience of its orders.

On April 25, 2012, trial counsel and direct appeal counsel separately petitioned the Colorado Supreme Court for an order to show cause why Judge Rafferty's April orders should not be vacated.  It appears that post-conviction counsel also sought immediate review of the issue of disclosure of Owens' trial files.[3]  On April 26, 2012, the Colorado Supreme Court stayed the orders.  On June 14, 2012, the Colorado Supreme Court denied trial counsel's and direct appeal counsel's petitions, and vacated its stay of the trial court's orders.  It declined to issue an order to show cause; thus, it appears the Court did not rule on the merits of the constitutional challenges to the URS.

---

[3]  Defendants' response to the motion for preliminary injunction notes that all three sets of attorneys filed separate original proceedings under Colorado Appellate Rule 21, seeking immediate appellate review of the portions of the URS at issue here.

On June 19, 2012, the state district court ordered that trial counsel disclose its file to post-conviction counsel "immediately" and "file a certification with the Court by 6/25/12 that disclosure has occurred." (Compl. ¶ 50.) Trial counsel complied with the order, and delivered to post-conviction counsel its file, including all documentary privileged information. Post-conviction counsel were ordered to file the post-conviction motion by July 30, 2012.

On July 26, 2012, post-conviction counsel said it would not provide direct appeal counsel with advance notice of the privileged information it would be disclosing to the government when it filed its post-conviction motion. On July 29, 2012, direct appeal counsel reported to trial counsel that post-conviction counsel would be disclosing imminently privileged materials to the government. Direct appeal counsel advised that they had made strenuous objections to that disclosure, and that they believed the disclosures "will *directly harm Mr. Owens's appeal* and any further proceedings in this matter, and are privileged and *should not be disclosed under any circumstances.*" (Compl. ¶ 55.) Direct appeal counsel then requested that trial counsel "exercise any option available to you in an attempt to recover the privileged materials before they are disclosed to the government and Mr. Owens is harmed." (*Id.*)

On July 30, 2012, direct appeal counsel initiated suit in this Court in Case No. 12-cv-01993. Trial counsel initiated 12-cv-01994 on July 31, 2012. Motions for a temporary restraining order have been filed in both cases seeking to prevent disclosure of the privileged materials to the government without direct appeal counsel's approval.

On August 8, 2012, Owens' post-conviction counsel filed an "Emergency Motion" for a stay of the post-conviction proceedings in the state district court, citing the instant litigation as grounds.  (Ex. A to the Joint Resp. of Colo. Attorney General and 18th Jud. Dist. Attorney Defs. To Mot. for TRO.)  On August 10, 2012, the state district court issued a minute order staying the impending deadlines for fifteen days, and noting that Owens "former trial counsel have placed [post-conviction counsel] and, by extension, this court in the untenable position of complying with this court's disclosure deadlines or suffering possible contempt proceedings in U.S. District Court." (Ex. B, *id.*)  Thereafter, the state district court extended the disclosure deadlines until September 15, 2012.

A hearing was held in the state district court before Judge Rafferty on September 11, 2012, in reference to several issues related to this case and the case filed by direct appeal counsel.  At the hearing, Judge Rafferty found that trial counsel had complied with its directive to deliver its file to post-conviction counsel, and that they had delivered "their entire physical file".  (Sept. 11, 2012 Tr. at 12:19-21, 21:23-22:1, ECF No. 31.)  This included "a copy of the trial file" and "all documentary materials that would constitute work product."  (*Id.* at 15:3:5.)  Judge Rafferty also ordered "that post-conviction counsel are in control of all decisions on disclosure of trial counsel's file."  (*Id.* at 22:2-5.)  Disclosure of the trial files was to be made to the government by September 17, 2012—the first business day after the initial deadline of Saturday, September 15, 2012.  (*Id.* at 42:10-13.)

Judge Rafferty also found that Owens previously, after "thorough advisement", had announced his decision to challenge the effectiveness of his trial counsel."  (Sept.

-8-

11, 2012, Tr. at 39:1-6, ECF No. 31.)  Further, he noted that Owens was adequately advised that if he chose to challenge the effectiveness of counsel in the post-conviction proceedings, he would automatically waive the confidentiality of communications between him and his trial counsel (*Id.* at 40:20 - 41:9), *i.e.*, there would be an automatic waiver of the attorney-client and work product privilege.

Also on September 11, 2012, trial counsel filed a motion for temporary restraining order seeking an order barring post-conviction counsel from disclosing privileged material not approved by direct appeal counsel.  On September 12, 2012, post-conviction counsel filed a response and the Attorney General Defendants and District Attorney Defendants jointly filed a separate response.[4]

III.   ANALYSIS

Defendants' motion seeks to dismiss the action filed in 12-cv-01994 on several bases.  First, they assert that Owens' trial counsel, the plaintiffs to this suit, lack standing.  Second, they argue that the two consolidated cases violate doctrines against lawsuits that are collusive.  Third, it is argued that these proceedings are interfering with state-court criminal litigation in violation of doctrines that require federal abstention. Fourth, it is argued that the complaint fails to state a claim for relief, as one of the elements for an injunction is irreparable injury.  Defendants assert that irreparable injury cannot be established here because Owens' interests— including the right to seek both direct federal review and federal habeas—are fully protected in the underlying state

---

[4] Trial counsel's previous motion for temporary restraining order filed on July 31, 2012 (ECF No. 2 in 12-cv-01994), as converted by Judge Marcia S. Krieger to a motion for preliminary injunction (ECF No. 17), also remains pending.

court proceedings.  Finally, it is argued that some of the individual Defendants should be dismissed under rules of Eleventh Amendment immunity.

    A.   <u>Abstention</u>

I first address whether federal abstention is required under the principles articulated in *Younger v. Harris*, 401 U.S. 37 (1971).  Defendants note on that issue that the very same constitutional issues raised in the case have already been rejected by the state court judge, and will presumably be challenged again in Colorado's state courts as Owens' appeals progress.  They argue that although Owens will be able to challenge that ruling in the state court and United States Supreme Court, as well as through federal habeas proceedings, his trial counsel has instead taken the unusual and unwarranted step of seeking an injunction from a federal judge, the effect of which would be to prohibit the parties from complying with the state court judge's orders. Defendants contend that the mere existence of this suit is interfering with the ability of state court prosecutors to comply with deadlines under Colorado law, and also is jeopardizing Owens' rights as a criminal defendant.  Thus, they assert that the relief sought would be contrary to well-established abstention doctrines that preclude federal interference with ongoing state court litigation.

Turning to my analysis, "[u]nder the *Younger* abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief -such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings -' when a state forum provides an adequate avenue for relief." *Weitzel v. Div. of Occupational and Professional Licensing,* 240 F.3d

871, 875 (10th Cir. 2001) (quotation omitted).  The *Younger* doctrine is based "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems."  *Phelps v. Hamilton,* 122 F.3d 885, 889 (10th Cir. 1997).

The federal court must abstain from hearing a case pursuant to *Younger* when "'(1) there is an ongoing state criminal, civil or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Weitzel*, 240 F.3d at 875 (quotation and internal quotation marks omitted).  "'*Younger* abstention is non-discretionary;' the district court must abstain once the conditions are met, 'absent extraordinary circumstances.'"  *Id.* (quoting *Amantullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)).

It is undisputed in this case that there is an ongoing state criminal proceeding, and Defendants have presented evidence that the federal court proceeding would disrupt that proceeding.  Indeed, the state district court's Minute Order of August 10, 2012 states that the court was placed "in the untenable position of complying with this court's disclosure deadlines [regarding the post-conviction appeal] or suffering possible contempt proceedings in U.S. District Court."  (Ex. B to Defs.' Brief in Supp. of Joint Mot. to Dismiss.)  Further, the state district court has imposed a deadline of September 17, 2012, for the disclosure of the privileged materials.  If this case goes forward, that deadline would be directly impacted and post-conviction counsel could be precluded

from complying with other state statutory and procedural requirements.  Post-conviction

counsel assert in that event that there would then be an actual risk of procedural

default, and that Owens' ineffective assistance of counsel claims could be barred.

It is also undisputed that the state proceeding involves important state interests,

matters which traditionally look to state law for their resolution or implicate separately

articulated state policies.  The state case involves post-sentencing proceedings relative

to a death-sentenced defendant.  It is hard to imagine an interest more important than

that.  The federal case would disrupt the State of Colorado's "efforts to protect the very

interests which underlie its criminal laws and to obtain compliance with precisely the

standards which are embodied in its criminal laws." *Huffman v. Pursue, Ltd.*, 420 U.S.

592, 604 (1975).  Further, since trial counsel are challenging the constitutionality of the

URS relative to Owens, a matter of first impression in the state, the federal case will

"prevent[] the state not only from effectuating its own substantive policies, but also from

continuing to perform the separate function of providing a forum competent to vindicate

any constitutional objections interposed against these policies."  *Id.*

Finally, I find that the state court provides an adequate forum to hear the claims

raised in these cases.  Defendants point out that the very same constitutional issues

have been raised in the state court, and will presumably be challenged again in the

state court as Owens' appeals progress.  Indeed, at the hearing in April 2012 before

Judge Rafferty, post-conviction counsel made the same arguments at issue in this case.

For example, he argued that:

> Mr. Owens is entitled to conflict-free counsel, not two sets of conflicting lawyers. He does not have that set of attorneys. He does not have a conflict-free attorney so everything that we're doing here is unfair.
>
> [T]hese proceedings are not complying with the Sixth Amendment, the Eighth Amendment or the Fourteenth Amendment. . . .

(Ex. 2 to Trial Counsel's Reply in Supp. of Mot. for Temporary Retraining Order, ECF No. 34, at 66:12-18.)  Post-conviction counsel also filed a Notice of Actual Conflict of Interest and Ethical Dilemmas in the state district court.  (Ex. 1, *id.*)[5]  The Supreme Court has expressed its "emphatic []affirmation. . . of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so." *Allen v. McMurry*, 449 U.S. 90, (1980).  Further, Owens will be able to seek additional review through federal habeas proceedings if he is dissatisfied with the final resolution of his federal claims by the state court.

Trial counsel argue, however, that it is unnecessary for the Court to consider the three conditions required for *Younger* abstention to apply because the case falls within an exception to abstention.  Specifically, trial counsel assert that the case involves extraordinary circumstances whereby the URS sets up a procedure for Owens that causes irreparable injury.  Additionally, trial counsel asserts that the Court's exercise of jurisdiction in this action will not visit any of the harms to federalism or comity *Younger* was concerned with.  Thus, they argue that *Younger* abstention is not required.

---

[5]  The post-conviction motion filed July 30, 2012, on behalf of Owens also purportedly renews and includes numerous claims of relief that the URS, both as written and as applied in this case, fails to comport with both state and federal constitutional requirements.

As to the first argument, trial counsel identify three allegedly irreparable constitutional injuries to Owens if the Court does not exercise jurisdiction.  The first relates to the fact that, pursuant to the URS and the state court orders, post-conviction counsel are about to turn over Owens' privileged information to the government despite the fact that direct appeal counsel has stated such disclosure will "gut" Owens's direct appeal brief and "be devastating" to that appeal."  (Ex. 1 to Pls.' Resp. to Mot. to Dismiss at 38:13-14, 22-24.)  Trial counsel argues that the disclosure of privileged information under these circumstances constitutes irreparable harm.

The second alleged irreparable harm stems from the fact that the URS requires Owens to make a choice now whether to assert all meritorious post-conviction claims, including those that automatically waive his privileges protecting from disclosure information relating to those claims.  If he withholds any such claims, they are irrevocably lost.  *See* C.R.S. § 16-12-209(1).  If he asserts privilege-waiving claims, he "guts" his direct appeal, as discussed previously.  This is a lose-lose injury that trial counsel argues is irreparable.  Finally, trial counsel assert that by requiring Owens to choose now between an unimpaired post-conviction motion championed by one set of Sixth Amendment counsel and an unimpaired direct appeal championed by another set of Sixth Amendment counsel, the URS deprives him altogether of effective assistance of counsel on the very question that has no constitutional answer.

Turning to my analysis, an exception exists to *Younger* abstention where the case "presents an extraordinary circumstance warranting federal intervention." *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007).  It applies where: (1) the state case

-14-

involves bad faith or harassment; (2) the defendant is being prosecuted under a statute

that is flagrantly and patently unconstitutional, or (3) there are other extraordinary

circumstances involving irreparable injury.  *Phelps v. Hamilton,* 59 F.3d 1058, 1064

(10th Cir. 1995).  Trial counsel have never alleged that Owens was prosecuted in bad

faith.  They also have not argued or shown that Colorado's first

degree murder statute under which Owens is being prosecuted is unconstitutional.[6]

Instead, they appear to rely on the catch-all third category.

Thus, trial counsel argue that abstention is not required because they have

shown irreparable harm to Owens.  In order to qualify for this exception, however, the

"danger of irreparable loss" must be "both great and immediate."  *Younger*, 401 U.S. at

45-46; *see also Watson v. Buck*, 313 U.S. 387, 401 (1941).  Further, "the threat to the

plaintiff's federally protected rights must be one that cannot be eliminated" in the state

court proceedings.  *Walck*, 472 F.3d at 1333; *see also Younger*, 401 U.S. at 46 (the

harm must not be one that can be "eliminated by defense against a single criminal

prosecution").

Trial counsel argue that they meet the exception to abstention here, as Owens'

constitutional rights cannot be eliminated by his defense in the criminal prosecution.

Indeed, counsel asserts that these threats unconstitutionally and irreparably impair

Owens' very ability to defend himself in proceedings in which the government seeks his

death.  I reject this argument.

---

[6]  Further, they have not shown that the URS itself is "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'"  *Younger*, 401 U.S. at 53-53 (quotation omitted).

The Supreme Court has stated that if the plaintiff was "accorded. . . an opportunity to fairly pursue [his] constitutional claims in the ongoing state proceedings", this exception does not apply. *Juidice v. Vail*, 430 U.S. 327, 337 (1977). Indeed, abstention under *Younger* "is particularly applicable in a case . . .where the pending state court may rectify any constitutional violations." *Weitzel*, 240 F.3d at 876. That is because abstention "'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12 (1987) (quotation omitted).

Here, as discussed earlier, all three sets of Owens' attorneys have raised the exact same complaints in this case as in state court—both in the state district court and in the proceedings filed in the Colorado Supreme Court. Owens' counsel asked the federal court to step in only after those repeated requests for relief were rejected by the state courts. Under those circumstances, where Owens and his attorneys have been afforded and have taken advantage of opportunities to raise the federal constitutional arguments they now ask this Court to consider, I find that trial counsel have not shown that exceptional circumstances exist for the Court to refrain from abstention. The fact that these challenges have, to date, been unsuccessful does not create a great, immediate, and irreparable injury in the sense required by *Younger*'s narrow exception for extraordinary circumstances. *See, e.g. Moore v. Sims*, 442 U.S. 415, 425 (1979).

While trial counsel argue that the three harms they point out cannot be addressed adequately in state court, I find no support for that contention. Counsel have

not shown "'that state procedural law barred presentation of [Owens'] claims.'"  *Pennzoil Co.*, 481 U.S. at 14 (quoting *Moore*, 442 U.S. at 432).  Further, while it is argued that Owens is forced improperly to choose between competing rights, I note that there is nothing inherently wrong with requiring a criminal defendant to choose among competing rights.  As noted by the Supreme Court, "[t]he criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow."  *McGautha v. California*, 402 U.S. 183, 213 (1971), *vacated on other grounds*, *Crampton v Ohio*, 408 U.S. 941 (1972).  "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."  *Id.*  "The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."  *Id.*  The state court can certainly decide this issue, and should be the court in the first instance to make such determinations since it relates to a statutory scheme enacted under state law.

Similarly, the fact that Owens may have received differing advice about how to proceed does not necessarily mean this deprives him of effective assistance altogether. In the context of complex, post-conviction capital litigation, it is unsurprising that experienced counsel would have differing views on strategy.  Again, however, this issue can be raised in the state court.[7]

---

[7] The case trial counsel rely on as to this issue is inapposite.  In *Penson v. Ohio*, 488 U.S. 75, 88 (1988), the petitioner was left completely without representation during the appellate court's decisional process.  That is not the situation here.  Indeed, the *Penson* court noted that this was "quite different from a case in which it is claimed that counsel's performance was ineffective", as alleged in this case.  Further, *Penson* is an example of how a flaw in a state court's appellate processes was *remedied* on direct appeal, through a reversal and remand for further proceedings in which the errors would be corrected.

The most problematic is trial counsel's argument that Owens will suffer irreparable harm in connection with disclosure of materials subject to the attorney client privilege.  Trial counsel argue, and I agree, that the general injury or harm caused by the improper disclosure of material subject to the attorney-client privilege is irreparable. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003); *Matter of 636 South 66th Terrace, Kansas City, Kansas*, 835 F. Supp. 1304 (D. Kan. 1993).  As noted by the Ninth Circuit, "once privileged materials are ordered disclosed, the practical effect of the order is often 'irreparable by any subsequent appeal.'"  *In Re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1088 (9th Cir. 2007) (quotation omitted); *see also In Re Bulow*, 828 F.2d 94, 98 (2d Cir. 1987).

Here, however, Owens has already waived the attorney-client privilege. Colorado law, including that expressed in the URS, is consistent with that of other jurisdictions in providing that a criminal defendant's decision to allege ineffective assistance of trial counsel automatically and impliedly waives the privilege with respect to information that is related to the ineffective assistance claim.  *See, e.g., People v. Madera*, 112 P.3d 688, 691 (Colo. 2005).  Judge Rafferty of the state district court made explicit findings that Owens previously made the choice to assert ineffective assistance of counsel claims and waived the attorney client and work product privilege.  In accordance with this waiver, trial counsel's file has been turned over to post-conviction counsel.  Thus, there are no privileged materials that are being improperly disclosed.

The issue thus presented in this case is that, under the URS, Owens had to make this choice and disclose privileged materials prior to the commencement of his

direct appeal.  Trial counsel assert that disclosure of these materials to the government, which has not yet occurred, will irreparably harm Owens by negatively impacting the direct appeal.  They do not, however, provided any explanation as to how the direct appeal would actually be harmed.  Direct appeal counsel in 12-cv-01993 also did not provide any detail on this issue.  Trial counsel also have not shown that the URS will somehow expand the scope of the record that the Colorado Supreme Court considers for the direct appeal phase of Owens' appellate process.

In any event, I find that this is an issue that can and should be dealt with by the state court in connection with the appeal process provided by state law.  If disclosure of information for Owens' post-conviction claim actually does pose some specific, identifiable problem to his direct appeal, Owens will be able to present the state and federal appellate courts with a concrete record of how he has been or will be harmed, and he could ultimately be awarded relief relative to that harm—whether that be a new direct appeal, a new post-conviction challenge, or theoretically even a new trial.[8]

Trial counsel also assert that the *Younger* abstention doctrine "merits no application to the question of whether [a post-conviction movant] may proceed in federal

---

[8]  I also note that the case relied on by trial counsel does not support their argument that the disclosure of privileged material for an ineffective assistance claim warrants federal intervention in a pending state court criminal matter.  *See Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984).  *Klitzman* involved a federal investigation of an attorney for defrauding insurance companies through the mail. *Id.* at 957.  U.S. Postal Inspectors executed an overbroad search warrant of the attorney's law office that allowed them to seize all client files, regardless of whether they were related to the cases under investigation and which "disregarded any concept of the attorney-client privilege."  *Id.* at 957-58, 960.  Recognizing that privileged information of innocent persons was implicated, *Klitzman* upheld a district court's grant of preliminary injunction commanding return of the seized documents. *Id.* at 962.  By contrast, here Owens controls the attorney-client and work-product privileges from his own criminal trial, and has waived those privileges in an effort to show that his trial attorneys were incompetent. *Klitzman* says little or nothing about the propriety of *Younger* abstention under these circumstances.

court while he seeks post-conviction relief in the state court system", citing *Odom v.*

*Kaizer*, 2009 WL 2709395, at *2 (D.N.D. Aug. 24, 2009).   Again, I disagree and find the

*Odom* case unpersuasive on that issue.   *Younger* applies throughout the appellate

proceedings of a criminal defendant.   *Huffman*, 420 U.S. at 608.   As *Huffman* explained:

> Virtually all of the evils at which Younger is directed would
> inhere in federal intervention prior to completion of state
> appellate proceedings, just as surely as they would if such
> intervention occurred at or before trial. Intervention at the later
> stage is if anything more highly duplicative, since an entire trial
> has already taken place, and it is also a direct aspersion on the
> capabilities and good faith of state appellate courts.

*Id.*   Indeed, "a judicial system's appellate courts. . . are by their nature a litigant's most

appropriate forum for the resolution of constitutional contentions."   *Id.*   That is especially

true when, as here, "the constitutional issue involves a statute which is capable of

judicial narrowing."   *Id.*   Here, the post-conviction proceedings are undisputedly part of

Owens' appellate proceedings under the URS.[9]

Finally, trial counsel argue that *Younger*'s concerns about comity and federalism

are inapplicable as the exercise of federal jurisdiction here does not "unduly interfere"

with the State of Colorado's legitimate activities.   They point out that the URS's strict

two year period for post-sentence proceedings can be extended.   Thus, the Colorado

Supreme Court held that proceedings under the URS could be extended so long as

---

[9] Consistent with this, many cases have held that *Younger* abstention applies when a criminal
defendant is pursuing a post-conviction relief.   *See Peay v. Massiah-Jackson*, 133 Fed. Appx. 31, 32-33
(3d Cir. 2005); *Koch v. Tilton*, No. 07-00643, 2007 WL 3097005, at *2 (E.D. Ca. Oct. 22, 2007); *Noe v.
Lake County, Ind.*, 468 F. Supp. 50, 52 (D. Ind. 1978); *see also Jackson v. Whetsel*, 388 Fed. Appx. 795,
798 (10th Cir. 2010) (deeming *Younger* inapplicable only because defendant could not meaningfully seek
post-conviction relief on a theory that had already been rejected by the state's highest court).   I find these
cases persuasive.

extensions of time were "necessitated by extraordinary circumstances that could not have been foreseen and prevented." *People v. Owens*, 228 P.3d 969, 973 (Colo. 2010) After *Owens*, trial counsel argue that the State no longer has any legitimate interest in meeting some artificial time frame for finalizing death sentences.  They point to the case at bar as a compelling example.  Owens was convicted and sentenced to death in 2008. Yet, even before direct appeal counsel raised any concern over the disposition of Owens' privileges, the post-conviction proceedings had been pending for four years.

Trial counsel also assert on that issue that even if the federal court were to grant the requested injunctive relief, the State of Colorado's legitimate interests are unaffected.  The injunction would not prevent the Colorado state court from disposing of post-conviction claims generally and post-conviction claims that do not require the disclosure of privileged material to which direct appeal counsel objects.  As to post-conviction claims that require the disclosure of privileged material to which direct appeal counsel objects, trial counsel assert that nothing prevents the state court from disposing of those post-conviction claims after the direct appeal has been resolved.  Nor would the State of Colorado's legitimate interests be affected if the federal court granted the only other relief requested—a declaration that the URS is unconstitutional to the extent it requires post-conviction counsel to disclose privileged information to the government without direct appeal counsel's consent.  Such a declaration, according to trial counsel, in no way prevents the State from pursuing finality as to Owens.[10]

---

[10]   Indeed, trial counsel point out that if the challenged provisions of the URS are deemed unconstitutional, the serial approach would then apply.  Under that approach, there would be no privilege waiver affecting the defendant's direct appeal under that approach, as there would be no constitutionally

Again, I find no merit to trial counsel's argument.  Owens is currently represented by post-conviction counsel who plainly recognize that these federal proceedings could cause him harm.  As acknowledged by post-conviction counsel, these federal proceedings are causing postponements of jurisdictional state court deadlines, potentially depriving Owens of his statutory rights to post-conviction and direct appeal review.  (*See* Joint Defs.' Resp. to Mot. for Preliminary Inj. at 2-3).  While it is true that the Supreme Court in *Owens* held that those deadlines can be extended for "extraordinary circumstances that could not have been foreseen and prevented", 228 P.3d at 971-973, the state court found at a hearing on September 11, 2012, that the deadlines would not be extended.  Thus, it appears the state court did not find this case to rise to the level of extraordinary circumstances discussed in *Owens*.  Also, if the merits of trial counsel's constitutional challenge are addressed in this Court, a later habeas petition could be dismissed on the basis that a criminal defendant is only entitled to one federal habeas petition.  *See* 28 U.S.C. § 2244(b); *Burton v. Stewart*, 549 U.S. 147, 153-157 (2007) (per curium).

Finally, I reject trial counsel's assertion that this lawsuit does not implicate principles of comity because, if this lawsuit declared Colorado's statutory scheme to be unconstitutional, Colorado could go back to the serial approach under which it could eventually carry out Owens's execution.  There are several problems with this argument.  First, a state's interests are always implicated when a federal court declares

---

impermissible choice between an impaired direct appeal and an impaired post-conviction motion, and there would be no deprivation of the defendant's right to effective assistance of counsel.  Thus, none of the three constitutional injuries identified by counsel would be present.

one of its statutory schemes unconstitutional.  Second and more importantly, the

principle of comity requires that federal courts allow state courts to pass on the

constitutionality of their own statutes first.  This allows the state judiciary to correct any

violations of an individuals' constitutional rights. *Hamilton*, 59 F.3d at 1064.  Third, it is

conceivable that there could be duplicative proceedings in both this and the state court

were this case to go forward, *Huffman*, 420 U.S. at 604, and a decision in this case

could ultimately be discredited by the state court.  *See Pennzoil Co.*, 481 U.S. at 11

("When federal courts interpret state statutes in a way that raises federal constitutional

questions, 'a constitutional determination is predicated on a reading of the statute that is

not binding on state courts and may be discredited at any time—thus essentially

rendering the federal-court decision advisory and the litigation underlying it

meaningless'") (quotation omitted).

 I find from the foregoing that the motion to dismiss should be granted on grounds

of *Younger* abstention.  This is a situation "where federal involvement would block a

state's efforts to enforce its laws." *Brown ex rel. Brown v. Day*, 555 F.3d 882, 893 (10th

Cir. 2009).  Accordingly, "'[c]omity and federalism concerns are at their highest.'" *Id*.

(quotation omitted).  Further, trial counsel have not shown that "'extraordinary

circumstances' render the state court incapable of fairly and fully adjudicating the

federal issues before it." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).  They also have

not demonstrated "an extraordinarily pressing need for immediate federal equitable

relief. . . ." *Id.* at 125.  Accordingly, 12-cv-01994 is dismissed without prejudice. *See*

*Wideman v. Colorado*, 242 F. App'x 611, 615 (10th Cir. 2007) ("Because dismissals

based upon the *Rooker-Feldman* and *Younger* abstention doctrines are jurisdictional,

they should be entered without prejudice.").

    B.   <u>Standing</u>

I also find that even if abstention was not required under *Younger*, the case

should be dismissed for lack of standing by trial counsel, the plaintiffs to this suit.  To

have standing, the plaintiff must have "alleged such a personal stake in the outcome of

the controversy as to warrant *his* invocation of federal court jurisdiction." *Summers v.*

*Earth Island Inst.,* 129 S. Ct. 1142, 1149 (2009) (internal quotations omitted) (emphasis

in original).  "The Supreme Court's standing jurisprudence contains two strands: Article

III standing, which enforces the Constitution's case-or-controversy requirement, and

prudential standing, which embodies judicially self-imposed limits on the exercise of

federal jurisdiction." *The Wilderness Society v. Kane County*, 632 F.3d 1162, 1168

(10th Cir. 2011) (en banc) (internal quotations and alterations omitted).

Here, I find that trial counsel lack both Article III standing and prudential standing.

To establish standing under Article III, trial counsel "must have suffered an 'injury in fact'

- an invasion of a legally protected interest which is (a) "concrete and particularized;"

and (b) '"actual or imminent, not 'conjectural' or 'hypothetical'"'. *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560 (1992) (quotations and internal quotation marks omitted).

Trial counsel must also show "a causal connection between the injury and the conduct

complained of", and a likelihood that the injury will be "redressed by a favorable

decision." *Id.* Prudential standing imposes a related set of requirements.  Generally, a

plaintiff must have: 1) a specific grievance as opposed to a general injury shared by a

large class of citizens; 2) assert its own rights rather than those of third parties; and 3) have a complaint that falls within the zone of interest defined by the constitutional provision at issue. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-475 (1982).  The plaintiff, as the party asserting jurisdiction, bears the burden of showing that he has standing. *Id; Utah Ass'n of Counties v. Bush,* 455 F.3d 1094, 1100 (10th Cir. 2006).

Trial counsel fail to show that they meet these standards.  First, the pleadings do not establish that implementation of the unitary review scheme under the URS will damage them personally.  Instead, they assert that Owens, their former client, will suffer harm under application of the URS.  Trial counsel's complaint and TRO motions outline at some length the supposed dilemma they face due to allegedly conflicting directives from direct appeal and post-conviction counsel.  Based on the asserted disagreements among the three sets of attorneys, trial counsel argue that they have Article III standing because they owe their client Owens continuing constitutional, statutory, professional and ethical duties in regard to respecting his privileges.  As such, trial counsel argue they have standing to the same extent as Owens to assert his rights over the privileges.

This argument must be rejected since, according to the findings of the state district court, Owens has already waived his attorney-client and work product privilege and trial counsel has produced all the privileged documents to post-conviction counsel.  Since the privileges have already been waived, trial counsel has no standing to assert any rights that Owens had in connection with same or to attempt to safeguard his

privileges.[11]  To the extent trial counsel seek an order relieving them of the duty to turn over the privileged materials, that claim is moot and thus would not support an assertion of Article III standing.

For the same reasons, trial counsel's argument that they have third party standing to protect Owens' privileged materials must fail.  Third-party standing is prudential, and at the threshold requires that the party attempting to assert it also has standing under Article III.  *See* Wright & Miller, *Fed. Practice & Procedure,* § 3531.9.3 ("The ordinary starting point [for third-party standing] is the requirement that the party in court have suffered sufficient injury to establish Article III standing in the party's own interests[.]").  Since trial counsel lack Article III standing in their own right, their claim to third-party standing also fails.

Moreover, since trial counsel no longer have an attorney-client relationship, and have not for at least three years, I find that they do not have a sufficiently close relationship with Owens to establish third-party standing.  *See Kowalski v. Tesmer*, 543 U.S. 125, 130-131 (2004) (finding sufficient closeness when there was an *existing* attorney-client relationship).  Indeed, trial counsel has not even alleged that Owens approved their filing of the lawsuit.  Also, by asserting ineffective assistance of counsel

---

[11]  Further, any assertion by trial counsel that their documentary work product belongs to them when post-conviction proceedings invoke ineffective assistance of counsel claims appears unfounded. Under both the URS and statutory law in Colorado, when a defendant alleges ineffective assistance of counsel, he automatically waives any confidentiality, including attorney-client and work-product privileges, between him and his counsel.  C.R.S. §§ 18-1-417(1); 16 12-206(2).  The attorney thus cannot withhold work product related to same.  *See also Madera,* 112 P.3d at 689-692; *Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D. Colo. 1992) ("An attorney may not withhold work product from his own client."); Fred C. Zacharias, *Who Owns Work Product?,* 2006 U. Ill. L. Rev. 127, 141 (noting that in federal courts, "[l]awyers cannot hide behind the privilege to prevent clients from gaining access to information that would establish a failure of performance on the lawyers' part in litigation in which that performance is at issue").

claims against trial counsel, Owens has implicated trial counsel's professional competence in connection with their representation of him.  This creates an inherent conflict between trial counsel and Owens, *see McCall v. Dist. Ct.*, 783 P.2d 1223, 1227 (Colo. 1987).  Under these circumstances, I find that trial counsel are not proper parties to be representing Owens on a third-party basis.  *See Amato v. Wilentz*, 952 F.2d 742, 748-763 (3rd Cir. 1991) (genuine conflicts of interest "strongly counsel against third party standing").[12]

I also find trial counsel's ethical concerns about disclosure of privileged materials in Owens' file are allayed by the fact that they were and under state court order to disclose their file to post-conviction counsel "immediately" and to file a certification with the court that they had done so.  The state court's order was consistent with the requirements of Colo. R. Crim. P. 32.2(b)(3)(IV).  The Colorado Rules of Professional Conduct permit a lawyer to reveal information relating to the representation of a client "to comply with other law or a court order."  Colo. R. Prof. Conduct 1.6(a)(7).

Moreover, Judge Rafferty found at the hearing on September 11, 2012, that he is without authority to force trial counsel to cooperate with post-conviction counsel in order to effectively prosecute Owens' claim of ineffective assistance.  (Sept. 11, 2012 Tr. at 31-1, 12:12-16.)  Trial counsel are thus not under any threat that they will be forced to disclose client confidences or work product that is not in written form, and are thus not in a position to assert injury-in-fact.  Likewise, because by virtue of Colorado statute

_____

[12]  Nor can trial counsel show there is any "hindrance" to Owens ability to advance his own rights.  *Kowalski*, 543 U.S. at 131.  Indeed, in 12-cv-01993, Owens raised the same substantive claims that trial counsel now attempt to assert on his behalf in this case.

they have no claim to withhold or control the use or disposition of their written work product materials, trial counsel will suffer no injury by virtue of Owens' decision to pursue a claim of ineffective assistance of counsel.[13]

IV.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that the Colorado Attorney General Defendants' and 18th Judicial District Attorney Defendants' Joint Motion to Dismiss filed August 15, 2012 in 12-cv-01994 (ECF No. 19) is **GRANTED**.  Case Number 12-cv-01994 is **DISMISSED WITHOUT PREJUDICE**.

Dated:  September 14, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge

---

[13]  To the extent trial counsel are concerned about work product existing in their minds, not in their file, that is not the subject of the state court's disclosure order.  Since that material is not subject to production, there is no injury in fact as to same.